UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| DONNA G. MANESS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NOS. 2:10-cv-84; 2:08-cr-58(7) |
| | ) | *Judge Jordan* |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Acting *pro se*, Donna G. Maness [Maness or "petitioner"] brings this motion and amended motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, raising, as grounds for relief, several claims of ineffective assistance of counsel, [Docs. 400, 413].[1] She has also filed a supporting brief, [Doc. 409], and a motion for leave to proceed *in forma pauperis*, [Doc. 410], the latter of which is **DENIED** as unnecessary, since there is no filing fee for motions to vacate. The United States has submitted a response, arguing that petitioner's claims have no merit and that this § 2255 motion should be denied, [Doc. 415]. Its arguments are well taken and, for the reasons which follow, petitioner's motion will be **DENIED**.

### I. Standards of Review

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct her judgment of conviction and sentence on the ground that the sentence was

---

[1] All docket number references are to the docket numbers in No. 2:08-cr-58.

imposed in violation of the Constitution or laws of the United States, or that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003).

A prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). Thus, petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).

An evidentiary hearing is unnecessary if there are no material issues of fact in dispute or if the record conclusively shows that petitioner is not entitled to relief under § 2255. An evidentiary hearing is not required if a petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485, (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007). The Court finds no need for an evidentiary hearing in this case.

## II. Facts and Procedural History

The summary of the underlying facts is taken from petitioner's presentence investigation report ("PSR"). Petitioner's convictions arose from controlled buys of methamphetamine on three separate dates in January of 2008 by a confidential informant working for Kingsport, Tennessee law enforcement officials and from the results of a search of Maness's mobile home, a search undertaken pursuant to a warrant executed the day following the last controlled buy. Maness was initially indicted in a 14-count indictment (2:08-cr-17), along with six co-defendants, but later she was indicted in a 19-count indictment (2:08-cr-58), along with ten co-conspirators, and the earlier indictment was dismissed. In the remaining indictment, seven counts alleged offenses against petitioner.[2]

According to the PSR, the government had witnesses who would testify that Maness conspired to manufacture at least 200 but less than 350 grams of methamphetamine; distributed a quantity of the methamphetamine which was manufactured; purchased 59.04 grams of pseudoephedrine and provided it to other co-conspirators; and provided two locations to her co-conspirators at which they manufactured methamphetamine.

---

[2] The last indictment alleged these offenses against petitioner: conspiracy to distribute and to possess with the intent to distribute over 500 grams of methamphetamine, a violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (counts 1 & 2); aiding and abetting in the distribution of a quantity of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2 (counts 3-5); possession of equipment, chemicals, products and materials to manufacture methamphetamine, a violation of 21 U.S.C. § 843(a)(6) (count 12); and maintaining a residence for the purpose of manufacturing and distributing methamphetamine, a violation of 21 U.S.C. §§ 856(a)(1) and 18 U.S.C. § 2 (count 17).

3

Petitioner pled guilty to count 1 and to a lesser included offense in count 2, to wit, conspiracy to manufacture 50 grams or more of methamphetamine, in exchange for the dismissal of the remaining counts against her. Following the preparation of the PSR, to which no objections were made by either party, the Court sentenced Maness to two concurrent 72-month terms of imprisonment. Petitioner did not file an appeal, but instead has submitted this instant § 2255 motion.

### III. Grounds for Relief

Petitioner contends that she received ineffective assistance from her first appointed counsel, Dan Smith, and her second appointed counsel, Jefferson B. Fairchild. Maness charges her attorneys with several missteps, which she labels as ineffective assistance.

A. *The Controlling Law*

The Supreme Court has established a two-part test for determining when assistance of counsel in ineffective. *See Lockhart v. Fretwell*, 506 U.S. 364, 376-79 (1993); *Strickland v. Washington* 466 U.S. 668, 686-87 (1984). First, a petitioner must show that her counsels' errors were so egregious as to render counsels' performance constitutionally deficient, that is, outside the "wide range of professional assistance. *Strickland*, 466 U.S. at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsels' perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. As the Supreme Court explained, in order to show that counsel's performance was deficient, a petitioner must show "that counsel made errors so

4

serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 454-455 (quoting *Strickland*, 466 U.S. at 694). A petitioner must demonstrate that, due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the proceeding unreliable." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685 (2002)). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

The Sixth Amendment right to counsel extends to plea negotiations, *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010), and generally requires defense counsel "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).

B. *Allegations & Analysis*

1. *Failure to Advise of Possible Preemptive Plea Agreement*

Maness asserts that the first attorney error made in her case was the failure to inform her that, as opposed to going to trial, she could sign a plea agreement in Case Number 2:08-cr-

5

17(5) before a superceding indictment in the instant case, charging her with additional offenses, was handed down and, thereby, preempt any further charges being levied against her. Maness attributes a sentencing enhancement, which she received, to counsel's claimed misstep.

The United States responds that it was entitled to prosecute the full scope of Maness's criminal activity until jeopardy attached by the entry of a guilty plea or a trial. Thus, even if petitioner had indicated that she was interested in negotiating plea agreement under the initial indictment, respondent argues that it would have been free to seek additional charges against her.

An accused is entitled to effective assistance of counsel under *Strickland* during the plea bargaining process, including the consideration of formal plea offers, favorable to an accused, which were rejected and followed either by acceptance of a less favorable plea offer or a trial with harsher consequences, *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), or which were uncommunicated to the defendant and allowed to lapse. *Frye*, 132 S. Ct. at, 1408-09.

It is important to note what has not been alleged. Petitioner does not maintain, and there is no indication in the record, that any plea agreement ever materialized, much less that one was offered, but not communicated to Maness by her counsel, or that one was rejected and that latter proceedings culminated in harsher results than those which would have been entailed in the phantom plea agreement.

As to what has been alleged, the decisions in *Lafler* are instructive on the issues. In *Lafler*, the petitioner rejected a plea agreement, claiming that he did so because counsel had

convinced him that, as a matter of law, the prosecution would be unable to establish his intent to murder, since the shots he fired at the victim hit her below the waist. *Cooper v. Lafler*, 376 Fed.Appx. 563, 570, 2010 WL 1851348, *6 (6th Cir. May 11, 2010), *overruled on other grounds by Lafler v. Cooper*, 132 S.Ct. 1376 (2012). In fact, however, the nature of the victim's wounds was not a dispositive consideration under state law in determining whether an accused possessed an intent to kill. *Id*. Thus, because counsel's advice was legally incorrect, his performance was found to have been deficient. *Lafler v. Cooper*, 132 S.Ct. at 1384. ("[A]ll parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial; [i]n light of this concession, it is unnecessary for this Court to explore the issue.").

The same would be true here. Had Maness's attorney urged her to plea guilty to the first indictment and advised her that doing so would thwart the government from bringing additional charges in a subsequent indictment, that advice would have been wrong, and, as in *Lafler*, undoubtedly would have constituted a deficiency of performance. *See United States v. Hinton*, 703 F.2d 672, 679 (2d Cir. 1983) ("[T]he government's attorney was free to seek a superseding indictment with one or more additional charges before the trial commenced . . . ."). As it is, counsel did not give the legally incorrect advice Maness alleges he should have given, and his omission of such wrong advice does not amount to a performance which was deficient. *See, e.g., United States v. Quinones*, 906 F.2d 924, 928 (2d Cir. 1990) (Double jeopardy does not prohibit superseding indictment after defendant pled guilty over

7

government's objection to first indictment for conspiracy so as to bar prosecution on second indictment for gun possession).

2. *Presentence Report Claims*

In her second ground of ineffective assistance, petitioner asserts that she did not get her presentence report (PSR) until the day before sentencing. Only at this time was she able to review PSR and discover that it contained a recommendation for a three-level enhancement for creating a substantial risk of harm to human life. Maness maintains that she told her attorney that she disagreed with the enhancement, but that he responded that he could do nothing about it, as everyone in the case was receiving the same enhancement. Petitioner further maintains that she should not have been assessed two points for being on probation when the offense was committed and that the belated disclosure of the PSR to her violated the minimum 35-day notice requirement in Rule 32(2) and deprived her of the right to object to these enhancements.

The United States argues that Maness's attorney filed a notice of no objections to the PSR forty days before the sentencing hearing, which indicates that the probation officer complied with Rule 32(e)(2)'s 35-day notice requirement and further indicates that Maness had an ample opportunity to read the PSR, discuss it with her lawyer, and object to it. The United States also argues that, assuming that counsel denied Maness access to her PSR, no prejudice ensued from counsel's action as any objection would have been meritless since the questioned enhancements were properly applied.

8

a. The three-level enhancement

The probation officer added three points to the offense level, under United States Sentencing Guidelines §2D1.1(10)(C)(ii), because the offense involved the manufacture of methamphetamine and the offense posed a substantial risk of harm to human life. Maness challenges the increase to her offense level on the bases that she was not present when the arrests were made, did not know a co-defendant had a Methamphetamine lab, did not give him permission to cook methamphetamine in her home, and had never used or allowed anyone else to use her home to manufacture methamphetamine. Maness also contends that, "in all probability," she would not have received this enhancement had Rule 32 been followed.

Petitioner presents allegations of fact that, as the United States points out, are contradicted by the factual basis in the plea agreement—facts which Maness acknowledged. In that factual basis, petitioner admitted that she conspired with others to manufacture methamphetamine; purchased pseudoephedrine at several pharmacies and gave it to her co-conspirators to produce methamphetamine; provided to co-conspirators two locations at which they engaged in manufacturing methamphetamine; knew her co-conspirators were manufacturing methamphetamine; and permitted co-conspirators to produce methamphetamine at her residence on Bloomington Road and her trailer at Hobbs Mobile Manor—both located in Kingsport, Tennessee.

This enhancement, according to the PSR, was derived from the application of U.S.S.G. §2D1.1(10)(C)(ii), which instructs that the offense level is to be increased by three points

9

where the offense involves the manufacture of methamphetamine and the offense creates a substantial risk to human life. The PSR explained that one of the methamphetamine labs was located in a trailer in a densely populated mobile home park and that components of the lab were strewn haphazardly about the trailer.

The manufacture of methamphetamine requires the use of chemicals which are toxic, inherently dangerous, highly flammable, and explosive and can create toxic gases as a byproduct. *United States v. Layne*, 324 F.3d 464, 471 (6th Cir. 2003). Therefore, a methamphetamine lab, situated in a heavily populated area, as opposed to remote area, exposes nearby inhabitants or visitors to a life-threatening risk. *Id.*; *see also United States v. Chamness*, 435 F.3d 724 (7th Cir. 2006) (enhancement applied where methamphetamine lab was in a trailer in a mobile home park in a residential area).

Producing methamphetamine in a trailer in the Hobbs Mobile Home Manor, with the dangerous chemicals and byproducts involved in the manufacturing process, created a serious risk of harm to the officers, residents, and other persons in the mobile home park. This enhancement was properly applied and counsel did not render a prejudicial performance by failing to object to it.

b. The two-level enhancement

Petitioner next claims that counsel did not object when she was assessed two criminal history points for being on probation. Maness admits that she was on probation when she got

indicted, but nonetheless asserts that her probationary period ended in November 2008, with the implication being that her probation concluded prior to her sentencing in July, 2009.

The PSR shows that petitioner was arrested in Kingsport, Tennessee, on September 1, 2007, for simple possession and for theft under $500 in case numbers X80187 and X80188. On November 7, 2007, Maness pled guilty to both charges and received judicial diversion. In early 2009, those charges were dismissed.

The federal drug conspiracy offenses which are the subject of this motion, according to Maness's stipulation in her plea agreement, commenced approximately in March, 2007 and continued for one year. Thus, as the United States points out in its response, the conspiracy offense overlapped the last four months of Maness's diversionary period.

Under U.S.S.G. § 4A1.1(d), two points are to be added when a defendant has "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Referencing that guideline, the U.S. probation officer added two criminal history points because Maness was on diversion for those November 6, 2007, state court sentences. Because a "'criminal justice sentence' for the purposes of § 4A1.1(d) includes a 'diversionary disposition,'" *United States v. Paseur*, 148 Fed.Appx. 404, 409, 2005 WL 2001155, *4 (6th Cir. Aug. 19, 2005), the two criminal history points were added correctly because petitioner committed the federal drug conspiracy offense while she was under an order of diversion from her 2007 possession and theft convictions.

11

Consequently, counsel did not and could not have rendered ineffective assistance by failing to object to correctly-assessed criminal history points.

3. *Safety Valve Sentencing*

In the next instance of ineffective assistance, petitioner contends that she should have "gotten the safety valve." Under U.S.S.G. § 5C1.2, a Court may go below a statutory minimum sentence in certain cases, and sentence within the applicable guidelines sentence if a defendant meet the five criteria in 18 U.S.C. § 3553(f)(1)-(5). To have qualified for the safety valve reduction in her offense level, Maness would have had to satisfy all five of the criteria (not more than one criminal history point; no use of violence; no resulting death or serious bodily injury; no managerial role in the offense; and truthful disclosure to the government of all evidence concerning the offense).

Maness strikes out at step one because, as noted above, she received two points for committing the offenses while on state judicial diversion and ended up with three total criminal history points, according the PSR calculations. With 3 criminal history points, Maness did not qualify for a safety valve departure. *See United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir.2007) ("Section 3553(f), the so-called 'safety valve' provision, is not applicable if the defendant has more than one criminal history point...."). Thus, counsel did not render ineffective assistance for failing to urge upon the Court a safety valve departure for which she was not eligible.

4. *Waiver of Collateral Review*

12

In Maness's amended motion, she alleges that a provision in her plea agreement bound her not to file a "collateral attack," but that counsel did not explain, and she did not know, the meaning of the term, the nature of a § 2255 motion, or the impact of the waiver of her rights. The United States argues that, assuming that counsel failed to explain the waiver to his client, she sustained no prejudice as a result of counsel's alleged shortcoming. This is so, respondent contends, because petitioner, in fact, has filed a motion to vacate; the United States has responded to her motion; and it has not invoked or otherwise relied on the waiver provision as a basis to seek dismissal of her § 2255 motion. This argument is well taken.

While both a deficient performance and prejudice must be established in order to meet the *Strickland* test, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697. Maness cannot show prejudice since the waiver provision was not asserted by the United States to her detriment and since the Court has evaluated and rejected all claims of ineffective assistance of counsel raised in her motion. Because the waiver provision in the plea agreement did not serve to defeat the filing and consideration of the § 2255 motion, counsel did not render ineffective assistance in this instance.

## IV. Conclusion

Because petitioner has not borne her burden to show deficient performance and prejudice resulting from her lawyers' actions or omissions, her § 2255 motion to vacate, set aside or correct her sentence will be **DENIED** and this action will be **DISMISSED**.

13

## V. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if she is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court has individually assessed petitioner's claims under the relevant standards and finds that they do not deserve to proceed further because they are not viable in light of the governing law. Thus, jurists of reason would not conclude that the disposition of the claims were debatable or wrong. BecauseManass has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

An appropriate order will be entered separately.

**ENTER:**

_____
LEON JORDAN
UNITED STATES DISTRICT JUDGE